# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jhostyn A.S.M.,

     Petitioner,

v.

Daren K. Margolin, Director for
Executive Office for Immigration
Review, et al.,

     Respondents.

**ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS**
Civil File No. 26-02493
(MJD/LIB)

Andra Garcia, David L. Wilson, Wilson Law Group, Counsel for Petitioner.

David W. Fuller, Ebony Nicole Thomas, Assistant United States Attorneys,
Counsel for Federal Respondents.

This matter is before the Court on Petitioner Jhostyn A.S.M.'s Petition for

Writ of Habeas Corpus. (Doc. 1.) Petitioner claims he is currently unlawfully

detained in violation of the Fifth Amendment's Due Process Clause.

Respondents challenge Petitioner's arguments, maintaining that Petitioner is

subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and is not entitled

to a bond hearing.

## I.      FACTS[1]

Petitioner is a citizen of Ecuador and resided in Minnesota prior to his detention.  (Doc. 1 ¶¶ 11, 26.)  Petitioner has lived in the United States since June 19, 2024 when he entered the United States at Eagle Pass, Texas without inspection.  (Id. ¶ 27; Doc. 6 (Decl. of Deportation Officer Christopher Campbell in Supp. of Resps.' Opp.) ¶ 4.)  On June 19, 2024, U.S. Border Patrol determined that Petitioner was in the country without authorization and served him a Notice of Expedited Removal, form I-860.  (Doc. 6 ¶ 4.)  On that same day, Petitioner asserted a claim of credible fear of return to his country.  (Id.)  On June 24, 2024, Petitioner filed an Application for Asylum and Withholding of Removal, which is still pending.  (Id. ¶ 5.)

On July 14, 2024, United States Citizenship and Immigration Services ("CIS") issued a negative fear finding in Petitioner's case and Petitioner requested review by an immigration judge ("IJ").  (Id. ¶ 6.)  On July 15, an IJ affirmed CIS's negative fear finding.  (Id. ¶ 7.)  However, on July 18, CIS reversed its negative fear finding and ICE released Petitioner on an Order of Recognizance

---

[1] Facts from the Petition not disputed are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).  The Court also admits facts from Respondents' response that were not contained in the petition, but that Petitioner does not dispute.

on August 2, 2024.  (Id. ¶¶ 8, 10.)  On June 18, 2025, Petitioner's mother filed a timely application for asylum with the Immigration Court naming Petitioner as a derivative, which remains pending.  (Doc. 1 ¶¶ 29, 30.)

On January 30, 2026, Anoka Police arrested Petitioner for Traffic – Open Bottle Law; Possession and the Anoka County District Court convicted him on March 23 and sentenced him to one year probation.  (Doc. 6 ¶¶ 11-12 (citing Case # 19HACR251945).)

On April 9, 2026, Eagan Police arrested Petitioner for Criminal Sexual Conduct in the First Degree involving penetration of a victim under sixteen where there was a significant relationship to the victim and resulting injury in violation of Minn. Stat. § 609.342.1(h)(ii).  (Doc. 1 ¶ 32; Doc. 6 ¶ 13; Doc. 7 at 17 (Petitioner using the word "arrest" for the first time in conjunction with the April 9, 2026 event).)  Although Petitioner was interviewed, he was released and taken into ICE custody the next day.  (Doc. 1 ¶ 32.)  No formal complaint has been filed against Petitioner.  (Id. ¶ 33.)  Petitioner is currently held in ICE custody at the Freeborn County Adult Detention Center.  (Id. ¶ 35.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on May 5, 2026. (Doc. 1.) The Court issued an Order to Show Cause on May 6.  (Doc. 3.)  On May 12, Respondents responded and on May 18, Petitioner replied.  (Docs. 5-7.)

## II.   DISCUSSION

Petitioner argues that his detention is a violation of his Fifth Amendment Due Process Rights.  (Doc. 1 ¶¶ 44–53.)  He argues that the remedy for this violation is a bond hearing during which Respondents bear the burden to prove that Petitioner is a danger or flight risk. (Id. ¶ 4.)

### A.   Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  District courts have jurisdiction to hear habeas challenges to immigration-related detention.  Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

Id. at 693 (citations omitted).  This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout

4

immigration law." Id.  The petitioner bears the burden to prove illegal detention

by a preponderance of the evidence.  See Belsai D.S. v. Bondi, 810 F. Supp. 3d

1016, 1020 (D. Minn. 2025) (citations omitted).

**B.      Effect of Avila v. Bondi on Petitioner's Claims**

Respondents argue that Petitioner is subject to mandatory detention

pursuant to § 1225(b)(2)(A), as confirmed by the Eighth Circuit in Avila v. Bondi

170 F.4th 1128 (8th Cir. 2026). (Doc. 5 at 5-6.)  The Court agrees that the Eighth

Circuit's decision in Avila would preclude a statutory claim premised on § 1225.

Avila, however, does not foreclose constitutional or statutory claims not raised in

Avila. The Court therefore turns to Petitioner's Fifth Amendment Due Process

argument.

**C.      Fifth Amendment Due Process**

Petitioner applies the Mathews v. Eldridge balancing test to argue

that his continued detention violates his constitutional due process rights

guaranteed by the Fifth Amendment. (Doc. 1 ¶¶ 44–53 (citing Mathews, 424 U.S.

319 (1976).) Respondents argue that Petitioner is not being detained without due

process because detention under a constitutionally-legitimate statute enacted by

Congress does not violate due process.  (Doc. 5 at 7 (citing Brayam G. G. v. Bondi

et al., Case No. 26-cv-01985 (DMT/EMB), Doc. No. 22 (D. Minn. April 15, 2026 (relying on Demore v. Kim, 538 U.S. 510 (2003)).)  Respondents further assert that while Demore analyzed detention under § 1226(c), the detention provisions under § 1226(c) are analogous to those under § 1225(b).  (Id. (citing Rodriguez v. Jeffreys, Case No. 8:25-cv-714, 2025 WL 3754411, at *16 (D. Neb. Dec. 29, 2025)).)  Accordingly, Respondents argue that the "government can detain an alien for as long as deportation proceedings are still pending."  (Id. (citing Brayam G.G., Doc. No. 22 (cleaned up).)  Finally, Respondents rely on Banyee v. Garland, 115 F.4th 928, 933 (8th Cir. 2024) for the proposition that in the context of mandatory detention during removal proceedings, the Supreme Court has "already done whatever balancing is necessary" and therefore, the Mathews balancing test is not necessary.  (Id. at 8.)

The Court disagrees with Respondents' arguments.  First, with all due respect to the Honorable Brian C. Buescher of the District of Nebraska, the Court does not find the detention provisions under § 1226(c) analogous to those under § 1225(b).  See Rodriguez, 2025 WL 3754411, at *16.  The provisions of the two statutes do not overlap in any significant way, except, perhaps that they both mention inadmissibility under 8 U.S.C. §§ 1182(a)(6)(C) and (a)(7), prohibiting

6

admission based on misrepresenting or fraudulently stating a material fact to gain entry; falsely stating one is already a citizen of the United States to gain entry; prohibiting entry to one who does not have a valid passport authorizing him to return to his home country; and prohibiting entry to one who is not in possession of a valid non-immigrant visa.  8 U.S.C. 1182 §§ (a)(6)(C),(a)(7).  Importantly, as the facts of this case show, entry without a valid passport does not automatically authorize detention and removal when a noncitizen indicates an intention to apply for asylum and goes through credible fear interviews and appeals.  8 U.S.C. § 1225(b)(1)(A)(ii), (b)(1)(B).  Moreover, although <u>Rodriguez</u> has been cited four times in this District by the Honorable Paul A. Magnuson, every time was in "§ 1225/§ 1226 cases" in support of holdings that noncitizens who had been in the country for years were still "seeking admission."  <u>See</u> <u>Byron A. v. Bondi</u>, No. CV 26-1365 (PAM/JFD), 2026 WL 608535, at *2 (D. Minn. Mar. 4, 2026); <u>Argenis M. v. Bondi</u>, No. CV 26-1058 (PAM/DTS), 2026 WL 478189, at *1 (D. Minn. Feb. 19, 2026); <u>Eustaquio O. v. Berg</u>, No. CV 26-153 (PAM/DTS), 2026 WL 294923, at *2 (D. Minn. Feb. 4, 2026); <u>Guillermo N. v. Bondi</u>, No. CV 26-258 (PAM/DLM), 2026 WL 272403, at *2 (D. Minn. Feb. 2, 2026).  No other case in this

District has cited Rodriguez at all, and certainly not for the proposition that the detention provisions under § 1226(c) and § 1225(b) are analogous.

Rather, § 1226(c), entitled "Detention of Criminal Aliens," is a materially different statute from § 1225(b), which governs applicants for admission to the country, not individuals already deemed removable based on convictions for serious criminal offenses, which undermines Respondents' reliance on Demore, which is based on the fact that the detention provisions under § 1226(c) are analogous to those under § 1225(b). Likewise, Banyee, 115 F.4th 928 can be distinguished from the instant case for the same reason. Although both statutes provide for mandatory detention under certain circumstances, the statutory schemes at issue predicate mandatory detention on considerably different factual circumstances. For instance, in enacting § 1226(c), Congress made specific, categorical judgments about the dangerousness and flight risks posed by noncitizens convicted of certain enumerated offenses. Section 1225(b) does not do so. Petitioner here is being detained pursuant to § 1225(b) and the Court finds no justification similar to the justification in § 1226(c).

Finally, there is no reason for the Court to read the Eighth Circuit's broad due process pronouncements in Banyee as anything but cabined to the statutory

and factual context in which they arose.  The <u>Banyee</u> court's analysis is rooted in

detention under § 1226(c), and its reliance on Supreme Court precedent

reinforces that limited scope.  <u>Demore</u>, for example, similarly addressed

mandatory detention tied to certain criminal convictions under § 1226(c), while

<u>Zadvydas</u> considered post-removal-detention orders and interpretation of the

post-removal detention statute, 8 U.S.C. § 1231(a)(6).  <u>See</u> <u>Demore</u>, 538 U.S. at

514; <u>Zadvydas</u>, 533 U.S. at 689.  These cases, then, have <u>not</u> "already done

whatever balancing is necessary."  (<u>See</u> Doc. 5 at 8 (relying on <u>Banyee</u>, 115 F.4th

at 933).)  To the contrary, Petitioner's detention arises under a separate statutory

provision with a different factual predicate, and the Court must therefore

consider what due process is required for his individual claim.

### 1.    Petitioner's Fifth Amendment Protections

Petitioner is entitled to due process of law under the Fifth Amendment.

The Fifth Amendment provides, in pertinent part, that no person shall be

"deprived of life, liberty, or property, without due process of law[.]" U.S. Const.

amend. V.  The United States Supreme Court has made clear that the "Due

Process Clause applies to all 'persons' within the United States, including aliens,

whether their presence here is lawful, unlawful, temporary, or permanent."

9

Zadvydas, 533 U.S. at 693; see also Trump v. J. G. G., 604 U.S. 670, 673 (2025) (holding that "'[i]t is well established that the Fifth Amendment entitles aliens to due process of law'" in the context of removal proceedings) (quoting Reno v. Flores, 507 U.S. 292, 306, (1993)).  Therefore, Petitioner is protected by the constitutional protections contained within the Fifth Amendment.

### 2.   Mathews v. Eldridge Balancing Test

Turning to the merits of Petitioner's procedural due process claim, to determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test that weighs the following:

> [1], the private interest that will be affected by the official action; [2], the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3], the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 321.

### i.   The First Mathews Factor

Respondents claim that the first factor, Petitioner's private interest, "though significant in the abstract, is limited by the detention posture Congress assigned to applicants for admission." (Doc. 5 at 8 (citing DHS v. Thuraissigiam, 591 U.S. 103 (2020).)  The Court disagrees that Thuraissigiam limits Petitioner's

10

private interest.  In <u>Thuraissigiam</u>, a noncitizen was detained immediately after entering the country at the southern border.  591 U.S. at 114.  He was detained for expedited removal pursuant to 8 U.S.C. § 1225.  <u>Id.</u>  The Supreme Court determined that the petitioner was not entitled to a bond hearing because a noncitizen in his position "has only those rights regarding admission that Congress has provided by statute."  <u>Id.</u> at 140.

However, <u>Thuraissigiam</u> is easily distinguishable on the facts. The petitioner in <u>Thuraissigiam</u> "was apprehended 25 yards from the border and was thereafter continuously detained."  <u>Manuel G. v. Blanche</u>, No. 26-cv-2385, 2026 WL 1256358, at *4 (D. Minn. May 7, 2026).  The Court is persuaded by the Sixth Circuit's recent decision in <u>Lopez-Campos v. Raycraft</u>, where the court determined that the factual predicate for <u>Thuraissigiam</u> "merely reinforces our longstanding understanding that noncitizens 'on the threshold of initial entry stand[] on a different footing' than those who have 'passed through our gates.'" --F.4th--, Nos. 25-1965/1969/1978/1982, 2026 WL 1283891, at *12 (May 11, 2026) (quoting <u>Shaughnessy v. United States ex rel. Mezei</u>, 345 U.S. 206, 212 (1953)). Because Petitioner has been living in the United States for almost two years, the

11

Court finds that the holding in Thuraissigiam does not limit his private interest under the Mathews balancing test.

Instead, the Court finds that the first factor weighs in Petitioner's favor. The Supreme Court has referred to the interest in being free from physical detention the "most elemental of liberty interests." Hamdi v. Rumsfield, 542 U.S. 507, 529 (2004); see also Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects."). Petitioner is currently detained in the Freeborn County Adult Detention Center, where he has been for almost 2 months in circumstances that very likely mirror "criminal incarceration." See Gunaydin v. Trump, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (stating that "[w]hen assessing [the first factor], courts consider the conditions under which detainees are currently held, including whether a detainee is held in conditions indistinguishable from criminal incarceration") (citing Hernandez-Lara v. Lyons, 10 F.4th 19, 27 (1st Cir. 2021); Velasco Lopez v. Decker, 978 F.3d 842, 851 (2d Cir. 2020)). By his continued detention, Petitioner is also undoubtedly experiencing the deprivations of incarceration, like the loss of companionship. Therefore,

considering Petitioner demonstrates significant private interests affected by his ongoing detention, the first Mathews factor favors Petitioner.

### ii. The Second Mathews Factor

The second Mathews factor requires the Court to consider the risk of an erroneous deprivation of Petitioner's liberty as well as consider "the degree to which additional or substitute procedural safeguards could ameliorate the risks of erroneous deprivation." Selvin Adonay E.M. v. Noem, 817 F. Supp. 3d 750, 734 (D. Minn. 2025) (citing Mathews, 424 U.S. at 335).  The Court agrees with the decision in Rodriguez Brizuela v. Noem, where the court stated that "when a noncitizen was previously released, which in and of itself reflects a determination that the individual is neither a flight risk nor a danger to the community, there is 'a very high risk of erroneous deprivation of liberty' absent an individualized custody determination."  No. 5:26-CV-0279-JKP, 2026 WL 752257, at *6 (W.D. Tex. Mar. 12, 2026) (citation omitted).

Further, as the court in Jesus Alejandro G. A. v. Blanche noted, detention during removal proceedings is "'constitutionally permissible'" but "the government's authority to detain noncitizens is not limitless" and "should advance two regulatory goals: (1) ensuring the appearance of noncitizens at their

immigration proceedings; and (2) preventing danger to the community while those proceedings are ongoing." No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138, at *11 (D. Minn. May 18, 2026) (citing Demore, 538 U.S. at 513; Zadvydas, 533 U.S. at 690).

Petitioner argues that an individual bond hearing, where both parties have an opportunity to be heard, would allow an IJ to determine whether Petitioner's detention is, in fact, necessary to ensure Petitioner will be present at his future immigration proceedings as well as whether he poses any danger to his community. (Doc. 7 at 15 (listing the concerns an immigration judge would weigh at a bond hearing) (citation omitted).) According to Petitioner, Respondents' entire argument is premised on the assumption that mandatory detention under § 1225 is constitutionally permissible. (Id.) Petitioner asserts that a bond hearing is the way to protect against the erroneous deprivation of his rights.

On the other hand, Respondents state that "the risk of erroneous deprivation is low because detention under § 1225 turns on objective statutory predicates—most importantly whether Petitioner is an applicant for admission and whether the applicable subsection of § 1225 governs his custody—not on

14

discretionary findings of danger or flight risk." (Doc. 5 at 8.) The Court interprets Respondents' argument as stating that the Court should not be deciding this issue because "the statute" already has.

The second <u>Mathews</u> factor is a close call.  The Court has some difficulty with Respondents' argument regarding objective statutory predicates under § 1225 when Respondents do not state what objective statutory predicates under § 1225 they invoke, and they do not cite any of their exhibits to aid the Court. Section 1225—even just § 1225(b)—is voluminous and the Court is not the storied pig looking for truffles to help support Respondents' argument.  <u>See, e.g.</u>, <u>Murthy v. Missouri</u>, 603 U.S. 43, 67 n.7 (2024) ("As the Seventh Circuit has memorably put it, '[j]udges are not like pigs, hunting for truffles buried [in the record].'") (quoting <u>Gross v. Cicero</u>, 619 F.3d 697, 702 (2010)); <u>Daywitt v. Minnesota</u>, No. CIV. 14-4526 MJD/LIB, 2015 WL 4094199, at *16 (D. Minn. July 6, 2015) (noting that "it is not the Court's responsibility to complete Defendant's record for them") (citing <u>United States v. Dunkel</u>, 927 F.2d 955, 956 (7th Cir.1991)) ("Judges are not like pigs, hunting for truffles buried in briefs.").

The Court also has difficulty with Respondents' argument that consideration of danger or flight risk is inappropriate for the Court at this juncture. These are appropriate considerations.

That being said, the Court is also not enamored of Petitioner's argument that a bond hearing is necessary every time a petitioner is detained under § 1225(b), which appears to be what his argument boils down to. A due process analysis is a fact-based, individualized inquiry. See Rodriguez Brizuela, 2026 WL 752257, at *5 ("The circumstances and nature of a given case may affect various aspects of the due process analysis.").

The parties seem to have taken "all or nothing" stances on this Mathews factor. In the end, the Court finds that this factor weighs very slightly in favor of Petitioner because the Court does not believe that consideration of flight risk and/or dangerousness are inappropriate considerations for this Court. Id.; see also Enrique U. R. v. Sec'y of Homeland Sec., No. CV 19-1063 (MJD/BRT), 2019 WL 4120149, at *3 (D. Minn. June 17, 2019) (explaining that "[c]ourts in this district have utilized a fact-based 'reasonableness' standard to address whether pre-removal period detention complies with due process") (quoting Tindi v. Sec't, Dep't of Homeland Sec., 363 F. Supp. 3d 971, 977 (D. Minn. 2017)

16

(explaining that § 1226(a) and § 1226(c) usually rely on the same standard), R&R

adopted sub nom. Carlos Enrique U.R. v. Barr, 2019 WL 4081129 (D. Minn. Aug.

29, 2019).

### iii.    The Third Mathews Factor

The third Mathews factor requires the Court to consider the government's

interest "including the function involved and the fiscal and administrative

burdens that the additional or substitute procedural requirement would entail."

Mathews, 424 U.S. at 335.

Respondents argue that "Petitioner's criminal history demonstrates a

disregard for the rule of law and weigh[s] against the need for additional

procedural safeguards beyond those Congress provided under § 1225."  (Doc. 5

at 9.)  Respondents note that Petitioner was arrested on April 9, 2026, for

Criminal Sexual Conduct in the First Degree, an arrest that led to his encounter

with ICE.  (Id.) Petitioner was on probation at the time of this arrest for a

conviction for violating Minnesota's open bottle law.  (Id.)  Respondents also

state that Congress has a strong interest in, inter alia, ensuring the availability of

applicants for admission during removal hearings.  (Id.)

17

Petitioner, on the other hand, asserts that although "Respondents have an interest in ensuring that Petitioner appears for his removal hearings and poses no danger to the community, . . . such concerns . . . would be squarely addressed if the Court were to grant the petition and order a bond hearing." (Doc. 7 at 16 (quotation omitted) (ellipses in original).)  While Petitioner admits that his April 9 arrest was for a serious allegation, he notes that as of the date of his reply brief on May 18, 2026—five weeks after the arrest—no formal charges have been filed against him.  (Id. at 17.)  Petitioner states that Respondents equate arrest for conviction, a situation that "cannot stand."  (Id.)  Accordingly, Petitioner argues that the Court should grant him a bond hearing, in concert with precedent from this District and other district courts who have found due process violations for noncitizens detained under 8 U.S.C. § 1225(b)(2).  (Id. (citations omitted).)

The Court finds that this Mathews factor weighs in favor of Respondents. Although Petitioner is correct that his arrest for First Degree Sexual Conduct involving penetration of a victim under sixteen was merely that—an arrest and not a charge—the Court is not satisfied that Petitioner is not a danger to the community or that he will appear for future proceedings, especially considering that Petitioner was on probation when he was arrested.

The Court does not take this decision lightly.  However, not only is the crime that Petitioner was arrested for one of the most devastating crimes on the books, the Court also cannot ignore that Petitioner was arrested, although not charged as of May 18, only about four-and-one-half months into his probation for violating Minnesota's open bottle laws.

Moreover, all the petition states is that Petitioner was living in "Minnesota" prior to his detention.  He obviously has a biological mother somewhere in the United States because she filed an asylum petition with the Immigration Court naming Petitioner as a derivative.  (Doc. 1 ¶ 29.)  He also somehow allegedly has a "significant relationship" to the alleged victim of the crime for which Petitioner was arrested and questioned.

However, there is no information that Petitioner lives with his mother or any other family member or that he has created any other ties to anyone—or even any place—that would put the Court at ease that Petitioner has good reason to appear at removal proceedings.  And, while Petitioner has not been charged with a crime based on his alleged April conduct, the Court is concerned that Petitioner—a man who, as far as the Court knows, has no fixed home address, no friends, no strong family ties, no job, and no other reason to stay put and wait for

19

next steps—will abscond prior to any bond hearing the Court would order.

Contra, e.g., Orlando R.V.V. v. Blanche, Civil File No. 26-1903 (MJD/SGE), Doc.

No. 11 at 19 (Order granting Mot. Writ of Habeas Corpus) (noting that petitioner

"established a life in this country," had work authorization, a job, a girlfriend,

friends, and a quiet law-abiding life) (quoting Rodriguez Brizuela, 2026 WL

752257, at *6 (stating that petitioner had "established a significant presence in the

United States that requires due process protection"); Roberto M.C. v. Mullin,

Civil File No. 26-2554 (MJG/SGE), Doc. No. 8 at 11 (Order granting Mot. Writ of

Habeas Corpus in part) (noting under first Mathews factor that Petitioner had

"established clear community and familial ties in the years he has spent living in

the United States," had three U.S.-citizen children, and contributed to the

economy by working construction).

### iv.   Conclusion

Although two Mathews factors weigh in favor of Petitioner, the Court's

decision on the second factor in this case merely paved the way for the parties'

arguments on the third factor.  Weighing the Court's decision on the first factor

and the third factor, the Court will deny Petitioner's petition. This is not a

reflexive decision for the Court, but rather one that has been taken very

deliberately.  At the end of the day, the underlying nature of Petitioner's initial arrest and lack of information on Petitioner's home/work life and relationships tips the scales in favor of Respondents.

The Court notes that Petitioner has a video immigration hearing on June 9, 2026.  (Doc. 6-5.)  It is important that Petitioner be available for that hearing where he can present his arguments against removal.

## III.    ORDER

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 1, 2026                    s/Michael J. Davis
                                        Michael J. Davis
                                        United States District Court

21